No. 21-6580

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

JOHN BARFIELD,

*Plaintiff-Appellant,*

v.

TERESA CUNNINGHAM, FELICIA WILSON, MICHAEL NUNN,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of South Carolina
No. 8:20-cv-02388-DCN
Hon. David C. Norton

---

## BRIEF OF PLAINTIFF-APPELLANT

---

Allen Chaney
ACLU OF SOUTH CAROLINA
P.O. Box 20998
Charleston, SC 29413
(843) 282-7953

Jennifer A. Wedekind
AMERICAN CIVIL LIBERTIES UNION
915 15th Street NW
Washington, DC 20005
(202) 548-6610

*Counsel for Plaintiff-Appellant*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Fourth Circuit Local Appellate Rule 26.1, Plaintiff-Appellant John Barfield states that he is an individual and not a publicly held corporation, other publicly held entity, or trade association; that he does not issue shares to the public and has no parent companies, subsidiaries, or affiliates that have issued shares to the public in the United States or abroad; that no publicly held corporation or other publicly held entity has a direct financial interest in the outcome of the litigation; and that the case does not arise out of a bankruptcy proceeding.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF AUTHORITIES .................................................................... iv

INTRODUCTION ..................................................................................1

JURISDICTIONAL STATEMENT .........................................................2

STATEMENT OF ISSUES ....................................................................2

STATEMENT OF THE CASE..................................................................3

I.     Nature of the Case ...............................................................................3

II.    Factual Background ..........................................................................6

    A.    Defendants Provided No Treatment Or Follow-Up Care Of Any
        Kind Following Mr. Barfield's HCV Diagnosis. ..................................6

    B.    Defendants Denied Mr. Barfield HCV Treatment Based On A
        Blanket Policy. ......................................................................7

III.   Proceedings Below ..........................................................................8

STANDARD OF REVIEW ....................................................................10

SUMMARY OF ARGUMENT ...........................................................11

ARGUMENT ......................................................................................14

I.     The Lower Court Erred By Misapplying The Law And Overlooking
    Genuine Disputes Of Material Fact Regarding Defendants' Deliberate
    Indifference To   Mr. Barfield's Serious Medical Needs. ..........................14

    A.    HCV Is A Serious Medical Need. ......................................................16

      B.    A Reasonable Jury Could Find That Defendants Were Deliberately Indifferent To Mr. Barfield's Serious Medical Needs. ........................21

II.    The Lower Court's Additional Bases For Summary Judgment Are Without Merit. ...............................................................................................27

III.   The Lower Court Erred When It Applied The Eighth Amendment's Subjective Standard To Mr. Barfield's Fourteenth Amendment Claims. ......31

      A.    The Supreme Court Has Long Distinguished Between Eighth And Fourteenth Amendment Protections.......................................................32

      B.    *Kingsley* Clarified That An Objective Standard Must Be Applied To Fourteenth Amendment Claims, Like Mr. Barfield's Medical Care Claim.. ...............................................................................................34

CONCLUSION...........................................................................................38

REQUEST FOR ORAL ARGUMENT ....................................................38

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Abu-Jamal v. Wetzel*,
   No. 3:16-CV-2000, 2017 WL 34700 (M.D. Pa. Jan. 3, 2017) ...........................18

*Alderson v. Concordia Parish Corr. Facility*,
   848 F.3d 415 (5th Cir. 2017) ..................................................................37

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).................................................................................11

*Atkins v. Parker*,
   972 F.3d 734 (6th Cir. 2020) .................................................... 4, 5, 18

*Bell v. Wolfish*,
   441 U.S. 520 (1979).................................................... 34, 35, 38

*Brawner v. Scott Cty., Tennessee*,
   14 F.4th 585 (6th Cir. 2021) .................................... 32, 35, 36, 37, 38

*Bruno v. City of Schenectady*,
   727 F. App'x 717 (2d Cir. 2018) ............................................................36

*Campbell v. Hewitt, Coleman & Assocs., Inc.*,
   21 F.3d 52 (4th Cir. 1994) .......................................... 19, 20, 21, 27

*Castro v. Cty. of Los Angeles*,
   833 F.3d 1060 (9th Cir. 2016) ...............................................................32

*Coleman-Bey v. United States*,
   512 F. Supp. 2d 44 (D.D.C. 2007)..........................................................18

*Colwell v. Bannister*,
   763 F.3d 1060 (9th Cir. 2014) ...............................................................23

*Crigger v. Wright*,
   No. 1:15CV713 (LMB/IDD), 2016 WL 1626580
   (E.D. Va. Apr. 20, 2016)........................................................................25

*Cromer v. Brown*,
88 F.3d 1315 (4th Cir. 1996) ...................................................... 13, 28

*Darnell v. Pineiro*,
849 F.3d 17 (2d Cir. 2017) ...................................................... 32, 36

*Davenport v. Perry*,
No. 6:19-CV-02875-TLW, 2020 WL 3620023 (D.S.C. July 1, 2020) ....... 25, 26

*De'Lonta v. Angelone*,
330 F.3d 630 (4th Cir. 2003) .............................................. 12, 23, 27

*DePaola v. Clarke*,
884 F.3d 481 (4th Cir. 2018) ............................................................16

*Erickson v. Pardus*,
551 U.S. 89 (2007)............................................................................17

*Estelle v. Gamble*,
429 U.S. 97 (1976)...................................................................... 12, 15

*Farmer v. Brennan*,
511 U.S. 825 (1994)..........................................................................33

*Gordon v. Cty. of Orange*,
888 F.3d 1118 (9th Cir. 2018) ........................................... 32, 35, 36

*Gordon v. Schilling*,
937 F.3d 348 (4th Cir. 2019) ................................................ *passim*

*Griffith v. Franklin Cty., Kentucky*,
975 F.3d 554 (6th Cir. 2020) ............................................................37

*Hafer v. Melo*,
502 U.S. 21 (1991)............................................................................28

*Helling v. McKinney*,
509 U.S. 25 (1993)............................................................................15

*Henderson v. Sheahan,*
    196 F.3d 839 (7th Cir. 1999) .............................................................16

*Higgins v. E.I. DuPont de Nemours & Co.,*
    863 F.2d 1162 (4th Cir. 1988) ..........................................................11

*Hill v. Nicodemus,*
    979 F.2d 987 (4th Cir. 1992) .............................................................15

*Hilton v. Wright,*
    928 F. Supp. 2d 530 (N.D.N.Y. 2013) ..............................................17

*Hoffer v. Jones,*
    290 F. Supp. 3d 1292 (N.D. Fla. 2017) ...................................... 17, 18

*Iko v. Shreve,*
    535 F.3d 225 (4th Cir. 2008) .............................................................16

*Ingraham v. Wright,*
    430 U.S. 651 (1977).........................................................................34

*Kingsley v. Hendrickson,*
    576 U.S. 389 (2015)............................................ 14, 31, 32, 33, 35, 36, 37, 38

*Lee v. Town of Seaboard,*
    863 F.3d 323 (4th Cir. 2017) .............................................................11

*Makdessi v. Fields,*
    789 F.3d 126 (4th Cir. 2015) .............................................................16

*Martin v. Duffy,*
    977 F.3d 294 (4th Cir. 2020) ...................................................... 11, 30

*Martin v. Gentile,*
    849 F.2d 863 (4th Cir. 1988) ...................................................... 15, 31, 34

*Mays v. Sprinkle,*
    992 F.3d 295 (4th Cir. 2021) .............................................................34

*Miranda v. Cty. of Lake*,
　900 F.3d 335 (7th Cir. 2018) ................................................................ 32, 36, 37

*Pabon v. Wright*,
　459 F.3d 241 (2d Cir. 2006) ...........................................................................18

*Parks v. Blanchette*,
　144 F. Supp. 3d 282 (D. Conn. 2015).............................................................17

*Pevia v. Wexford Health Source, Inc.*,
　No. CV ELH-16-1950, 2018 WL 999964 (D. Md. Feb. 20, 2018)....................17

*Roe v. Elyea*,
　631 F.3d 843 (7th Cir. 2011) ............................................................ 17, 24, 29

*Scinto v. Stansberry*,
　841 F.3d 219 (4th Cir. 2016) ............................................................ 12, 15, 16

*Stafford v. Carter*,
　No. 1:17-cv-00289-JMS-MJD, 2018 WL 4361639
　(S.D. Ind. Sept. 13, 2018) ............................................................ 4, 5, 6, 17, 18

*Strain v. Regalado*,
　977 F.3d 984 (10th Cir. 2020) .......................................................................37

*Swain v. Junior*,
　961 F.3d 1276 (11th Cir. 2020) .....................................................................37

*United States v. Garcia*,
　855 F.3d 615 (4th Cir. 2017) ...........................................................................4

*Veeder v. Tri-Cap*,
　2018 WL 7254610 (E.D. Mich. Dec. 13, 2018) ..............................................30

*Whitney v. City of St. Louis*,
　887 F.3d 857 (8th Cir. 2018) .........................................................................37

*Wilson v. Seiter*,
　501 U.S. 294 (1991)........................................................................................33

**Statutes**

28 U.S.C. § 1291 ............................................................................2

28 U.S.C. § 1331 ............................................................................2

42 U.S.C. § 1983 ............................................................................2

**Rules**

Fed. R. Civ. P. 56(e) .............................................................. 30, 31

Fed. R. Evid. 201(b)(2) ..................................................................3

Fed. R. Evid. 201(c)(2) ..................................................................3

Fed. R. Evid. 201(d) .......................................................................3

**Other Authorities**

American Association for the Study of Liver Diseases, *HCV Testing and Linkage to Care* (last updated Sept. 29, 2021), https://www.hcvguidelines.org/evaluate/testing-and-linkage. ...........................4

American Association for the Study of Liver Diseases, *HCV Testing and Treatment in Correctional Settings* (last updated Nov. 6, 2019), https://www.hcvguidelines.org/unique-populations/correctional....................3, 6

American Association for the Study of Liver Diseases, *Introduction* (last updated Nov. 6, 2019), https://www.hcvguidelines.org/contents/welcome .....................5

American Association for the Study of Liver Diseases, *When and in Whom to Initiate HCV Therapy* (last updated Nov. 6, 2019), https://www.hcvguidelines.org/evaluate/when-whom ................................... 5, 6

Centers for Disease Control and Prevention, *Hepatitis C Questions and Answers for the Public* (last reviewed July 28, 2020), https://www.cdc.gov/hepatitis/hcv/cfaq.htm ............................................ 4, 5, 24

U.S. Dep't of Veterans Aff., *Hepatitis C medications: An overview for patients* (July 8, 2020),
  https://www.hepatitis.va.gov/products/treatment-update.asp ..............................4

**INTRODUCTION**

John Barfield has Hepatitis C virus ("HCV")—a serious, progressive disease that when left untreated results in permanent and irreversible liver damage, liver failure, and death.

Fortunately for Mr. Barfield, medical advances in the last decade have rendered chronic HCV a curable disease. A simple pill regimen lasting eight to 12 weeks will cure HCV in nearly all cases, and the current medical standard of care provides that all patients with chronic HCV should be treated without delay.

Unfortunately for Mr. Barfield, he is a pre-trial detainee incarcerated in the Florence County Detention Center ("FCDC"). As such, he is entirely dependent on Felicia Wilson, Teresa Cunningham, and Michael Nunn ("Defendants") for all of his medical care. And Defendants have categorically refused to provide Mr. Barfield any medical treatment for his HCV. This refusal is based not on any individualized medical rationale, but on a blanket policy that denies HCV treatment to all FCDC detainees.

After his requests for treatment were repeatedly denied, Mr. Barfield turned to the court. He asked the court to enforce his Fourteenth Amendment right to medical care and to order Defendants to treat his serious medical condition. But the lower court granted summary judgment to Defendants. In doing so, it ignored binding precedent from this Court, which provides that HCV is a serious medical

1

need and that refusal to treat the condition, based on a blanket policy, constitutes deliberate indifference. The lower court also overlooked genuine disputes of material fact, crediting a single Defendant's unsupported and conclusory opinions while disregarding record evidence to the contrary. And it applied the wrong constitutional standard to Mr. Barfield's claims as a pre-trial detainee. The decision below must therefore be reversed.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction in this case under 28 U.S.C. § 1331. This appeal arises from a final judgment entered on April 5, 2021, granting summary judgment and dismissing an action brought under 42 U.S.C. § 1983. JA 536. Mr. Barfield timely filed a Notice of Appeal on April 12, 2021. JA 537. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.     Whether the district court erred in granting summary judgment to Defendants-Appellees when a reasonable jury could find that Defendants denied Mr. Barfield HCV treatment based on a blanket policy, thus acting with deliberate indifference to his serious medical needs;

2.     Whether the district court erred in granting summary judgment to Defendants-Appellees when it applied the incorrect legal standard to Mr. Barfield's claims under the Fourteenth Amendment.

# STATEMENT OF THE CASE

## I.     Nature of the Case

Chronic HCV is a serious disease that, left untreated, causes liver damage,
liver failure, cirrhosis (scarring of the liver), liver cancer, and death. *See Gordon v.
Schilling*, 937 F.3d 348, 351 (4th Cir. 2019); JA 482. HCV disproportionately
affects people who are incarcerated. *Gordon*, 937 F.3d at 351. An estimated 12%
to 35% of incarcerated people have chronic HCV, and HCV-associated liver
disease is a frequent cause of death among incarcerated people. *See* American
Association for the Study of Liver Diseases, *HCV Testing and Treatment in
Correctional Settings* (last updated Nov. 6, 2019),
https://www.hcvguidelines.org/unique-populations/correctional (hereinafter
"AASLD, HCV Testing and Treatment in Corrections").[1]

---

[1] Mr. Barfield respectfully requests that this Court take judicial notice of the
publicly available information from government and professional association
websites cited in this brief. *See* FED. R. EVID. 201(c)(2) ("The court . . . must take
judicial notice if a party requests it and the court is supplied with the necessary
information."). This Court may take judicial notice at any point during the
proceeding of a fact that "can be accurately and readily determined from sources
whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2), (d).
Under Rule 201(b), the court may judicially notice a fact that is not subject to
reasonable dispute when it is either (1) generally known within the district court's
jurisdiction, or (2) can be readily determined from an indisputably accurate source,
such as a government website. *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir.
2017).

HCV is diagnosed with a blood test. Centers for Disease Control and Prevention, *Hepatitis C Questions and Answers for the Public* (last reviewed July 28, 2020), https://www.cdc.gov/hepatitis/hcv/cfaq.htm (hereinafter "CDC, HCV Questions and Answers"). Once diagnosed, additional tests are needed to assess the progression of the virus and the amount of liver damage. American Association for the Study of Liver Diseases, *HCV Testing and Linkage to Care* (last updated Sept. 29, 2021), https://www.hcvguidelines.org/evaluate/testing-and-linkage. *See also Stafford v. Carter*, No. 2018 WL 4361639, at *9 (S.D. Ind. Sept. 13, 2018). Those tests may include additional blood tests, transient elastography or a liver biopsy. *Id.*

Previously, the only treatment for HCV was interferon and ribavirin. U.S. Dep't of Veterans Aff., *Hepatitis C medications: An overview for patients* (July 8, 2020), https://www.hepatitis.va.gov/products/treatment-update.asp. A course of treatment was lengthy, taking six to 12 months. *Id. See also Gordon*, 937 F.3d at 352. It caused severe side effects and frequently was ineffective. *See Atkins v. Parker*, 972 F.3d 734, 736 (6th Cir. 2020). As a result, many people did not receive treatment. For incarcerated patients, the long length of a course of treatment was often cited as a rationale for delaying or denying treatment. *See Gordon*, 937 F.3d at 355; American Association for the Study of Liver Diseases, *When and in Whom to Initiate HCV Therapy* (last updated Nov. 6, 2019),

https://www.hcvguidelines.org/evaluate/when-whom (hereinafter "AASLD, When and Whom").

However, a new class of medications, called Direct-Acting Antiretroviral ("DAA") treatment, has rendered HCV a curable disease. DAA treatment, widely available for nearly a decade, resolves HCV in nearly all patients. AASLD, When and Whom. *See also Atkins*, 972 F.3d at 736; JA 482. A typical treatment regimen takes only eight to12 weeks and has few side effects. CDC, HCV Questions and Answers. *See also* JA 482. According to the American Association for the Study of Liver Diseases ("AASLD"), this shorter treatment duration "reduces stay-related barriers to HCV treatment in prisons." AASLD, When and Whom.

In response to these dramatic medical advances, the Infectious Diseases Society of America and the AASLD promulgated "evidence-based, expert-developed" standards for the routine treatment of HCV, known as the AASLD Guidelines. American Association for the Study of Liver Diseases, *Introduction* (last updated Nov. 6, 2019), https://www.hcvguidelines.org/contents/welcome. The current standard of care, as set forth in the AASLD Guidelines, provides that all patients should be treated with DAA medications, except for those with a short life expectancy. AASLD, When and Whom . *See also* JA 482; *Stafford*, 2018 WL 4361639, at *9. The standard of care further provides that patients should be treated early in the course of the disease, prior to the development of severe liver

5

disease or other complications. AASLD, When and Whom. Delays in treatment may decrease the benefits of that treatment. *Id. See also Stafford*, 2018 WL 4361639, at *9.

The AASLD Guidelines also specifically address HCV treatment in correctional settings and "recommend[] that individuals in prison receive treatment according to the AASLD Guidance." *Stafford.* 2018 WL 4361639, at *9. *See also* AASLD, HCV Testing and Treatment in Corrections.

## II.    Factual Background

### A.    Defendants Provided No Treatment Or Follow-Up Care Of Any Kind Following Mr. Barfield's HCV Diagnosis.

Mr. Barfield is incarcerated in the Florence County Detention Center. JA 7. He was diagnosed with HCV in August 2019. *See* JA 298.

Defendant Wilson is a registered nurse. JA 52. Mr. Barfield's medical records reflect that she has been one of his primary medical providers during his incarceration. Ms. Wilson conducted a medical evaluation of Mr. Barfield in June 2020 and regularly signed off on medication administration. *See, e.g.*, JA 136–37 (physical exam); JA 221–26 (February 2020 medication administration); JA 227–32 (March 2020 medication administration); JA 194–99, JA 203–06 (April 2020 medication administration); JA 151–54, 157–58, 170–71, 188–89 (May 2020 medication administration); JA 145–48, 134–35, JA 141–42 (June 2020 medication administration); JA 115–16, JA 119–22, JA 128–29, JA 131–32 (July 2020

medication administration); JA 96–97, JA 100–01, JA 111–12 (August 2020 medication administration).

There is no evidence in the record that Ms. Wilson, or any other clinician, provided Mr. Barfield with any medical care of any kind related to his HCV diagnosis. There is no evidence of any follow-up blood work or other tests to measure the progression of the disease or the current level of liver damage. There is similarly no evidence that Ms. Wilson, or any other clinician, ever considered whether DAA treatment was appropriate for Mr. Barfield based on his individual medical needs.

### B. Defendants Denied Mr. Barfield HCV Treatment Based On A Blanket Policy.

Mr. Barfield requested HCV treatment in May 2020. In his request, Mr. Barfield reminded Defendants of his diagnosis and informed them he would remain incarcerated for at least another year. *See* JA 56 ("I tested positive for Hep C about 10 months ago . . . It is very likely that I will be here for another year or so waiting on trial. Can I please be treated for the Hep C"). A day later, his request was denied for non-medical reasons: "Hope Health does not treat for HepC [sic] while incarcerated[.]" *Id.*

Mr. Barfield followed up, inquiring about the role of Hope Health and informing Defendants that treatment consists of a simple pill regimen. JA 57. He received a cursory response: "That is their rule not ours." *Id.*

Mr. Barfield continued to follow-up, repeatedly seeking treatment. *See* JA 58, 61, 62. Mr. Barfield explained to Defendants that the disease needs to be treated before it progresses, and again noted that he would be remaining at the jail for at least a year. *See id.* His requests were repeatedly denied. *See id.*

Mr. Barfield appealed the denial of his request, again informing Defendants that he had been diagnosed with HCV and needed treatment. Defendant-Appellee Cunningham responded. She did not address the substance of his request but referred him back to the medical department. *See* JA 61.

Mr. Barfield's final request for treatment was in September 2020. In response, he was told: "Hope Health do not treat inmates for Hep C unless they have initiated treated prior to incarceration [sic]." JA 63.

### III. Proceedings Below

Mr. Barfield filed suit pro se in June 2020. ECF No. 1. He filed an amended complaint in August 2020, seeking HCV treatment, $5,000 in compensatory damages, court costs, and any additional relief the court deemed just and fit. JA 6–16. Defendants did not move to dismiss, but answered, JA 17–21, and the parties entered into discovery.

Defendants moved for summary judgment in December 2020. JA 22. In support of their motion, Defendants submitted three largely identical affidavits from each of the named defendants, *see* JA 48–53, and an affidavit from Lynette

Patton placing Mr. Barfield's grievances into evidence. JA 54–55. In addition, Defendants submitted more than 400 pages of unauthenticated medical records, which appear to constitute Mr. Barfield's entire medical record from FCDC. *See* JA 64–473. Of those more than 400 pages, only a single page is relevant to HCV— the record documenting Mr. Barfield's initial diagnosis. *See* JA 298.

In Defendant Wilson's affidavit, she attests that she reviewed Mr. Barfield's medical records. JA 52. Defendants did not lay a foundation to establish Ms. Wilson as a medical expert. Nonetheless, Ms. Wilson, a registered nurse, proceeded to provide a medical opinion as to the seriousness of Mr. Barfield's condition and the appropriate course of treatment. *Id.* Ms. Wilson opined that Mr. Barfield's HCV is "not an objectively serious medical condition." *Id.* She also opined that treating Mr. Barfield was "not medically advisable" based on the generalized rational that "pretrial detainees can be transferred or released at any time from the FCDC." *See* JA 52–53.

Ms. Wilson does not describe the facts, if any, on which she based these opinions. Ms. Wilson similarly does not describe the methodologies, if any, used to arrive at her opinions. In particular, she does not describe how she assessed the seriousness of Mr. Barfield's condition without conducting or having access to any tests measuring the progression of his disease. She similarly does not discuss any individualized medical rationale for denying Mr. Barfield treatment for his HCV,

does not discuss Mr. Barfield's projected length of stay at the facility, and does not discuss how or why his particular length of stay makes treating a serious medical condition "not medically advisable."

The magistrate judge recommended granting the motion for summary judgment. JA 532. In doing so, the magistrate relied almost entirely on Ms. Wilson's affidavit. *See* JA 530–31. Based on this affidavit, the magistrate judge ruled that Defendants were not deliberately indifferent to Mr. Barfield's medical needs. JA 531.

In a footnote, the magistrate judge also concluded (1) that all Defendants were entitled to summary judgment to the extent they had been sued in their official capacities; and (2) that Defendants Cunningham and Nunn were separately entitled to summary judgment because they are not medical personnel and were not personally connected to Mr. Barfield's treatment. JA 531 n. 6. The magistrate judge declined to address Defendants' additional arguments in support of summary judgment. *Id.*

Mr. Barfield timely filed objections to the Report and Recommendation. JA 533. The district court affirmed the Report and Recommendation in full. JA 535.

## STANDARD OF REVIEW

This Court reviews a district court's award of summary judgment *de novo*. *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). The "narrow"

questions before the Court "are whether any genuine issues of material fact exist for the jury and if not, whether the district court erred in applying the substantive law." *Id.* (quoting *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988)).

This Court must view the facts in the light most favorable to Mr. Barfield, as the non-moving party, and draw all inferences in his favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). Further, this Court must "read the pleadings of a pro se plaintiff liberally and interpret them to raise the strongest arguments they suggest." *Martin v. Duffy*, 977 F.3d 294, 298 (4th Cir. 2020) (internal quotation marks omitted).

## SUMMARY OF ARGUMENT

HCV is a serious, but curable disease. When left untreated, it causes progressive and irreversible liver damage, and can lead to liver cancer and death. Despite this prognosis, Defendants categorically denied Mr. Barfield any treatment for his HCV. This denial was based not on his individual medical needs, but on a blanket policy that denies HCV treatment to all pretrial detainees due to their presumed length of incarceration. Nevertheless, the court below granted Defendants summary judgment. In doing so, it ignored binding precedent from this Court, overlooked genuine disputes of material fact, and applied the wrong

constitutional standard to Mr. Barfield's claims. The lower court's decision must be reversed.

A defendant's deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate this constitutional violation, a prisoner must show that (1) objectively, he has a serious medical need, and (2) subjectively, prison officials knew of that need, but disregarded it. *See Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).

There can be no debate that HCV is a serious medical need. Indeed, it is well-established in this Court and courts around the country that HCV easily satisfies the objective prong of an Eighth Amendment inquiry. *E.g.*, *Gordon*, 937 F.3d at 356–57. It is similarly well-established that the denial of medical care based on blanket policies in lieu of individualized medical determinations constitutes deliberate indifference. *E.g.*, *De'Lonta v. Angelone*, 330 F.3d 630, 635 (4th Cir. 2003). Even more to the point, this Court has ruled that reliance on a blanket policy that denies HCV treatment based on sentence length constitutes deliberate indifference. *Gordon*, 937 F.3d at 360.

The lower court ignored this binding case law when it granted Defendants summary judgment. It also disregarded genuine disputes of material fact, erroneously crediting one defendant's version of the facts and overlooking

contradictory evidence in the record. Indeed, the lower court's decision is summed up in a single sentence: "Given Wilson's declaration and Plaintiff's failure to forecast any evidence to rebut it, there is no basis for any reasonable inference that Defendants were deliberately indifferent to any medical need of Plaintiff's." JA 531. But Defendant Wilson's affidavit is inconsistent with other documents Defendants themselves placed in the record. And Mr. Barfield did, in fact, forecast evidence to rebut Ms. Wilson's affidavit. The district court therefore erred when it adopted Ms. Wilson's facts wholesale, even those that were contradicted or with no support, rather than viewing the facts in the light most favorable to Mr. Barfield. *See Gordon*, 937 F.3d at 356.

The lower court also erred when, in a footnote, it granted summary judgment to all Defendants based on Eleventh Amendment immunity, and to Defendants Cunningham and Nunn based on a lack of personal involvement. Mr. Barfield sued all three defendants in their individual and official capacities, and sought both injunctive relief and damages. The Eleventh Amendment only precludes claims for damages against the Defendants in their official capacities. *See Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996). Mr. Barfield's remaining claims, therefore, remain live. Further, there are genuine disputes of material fact as to the role Defendants Nunn and Cunningham played in the denial of care for Mr. Barfield, barring summary judgment.

Finally, the district court applied the wrong constitutional standard to Mr.

Barfield's claims, requiring reversal. As a pretrial detainee, Mr. Barfield's

constitutional rights are protected by the Fourteenth Amendment, not the Eighth

Amendment. The district court acknowledged as much, but went on to apply the

Eighth Amendment subjective deliberate indifference standard regardless. This

was error. The Supreme Court, in *Kingsley v. Hendrickson*, ruled that the correct

standard for a pretrial detainee's claim is "solely an objective one." 576 U.S. 389

(2015). Mr. Barfield succeeds under either standard, but guidance from this Court

is necessary to clarify the appropriate standard on remand.

## ARGUMENT

**I.     The Lower Court Erred By Misapplying The Law And Overlooking
Genuine Disputes Of Material Fact Regarding Defendants' Deliberate
Indifference To Mr. Barfield's Serious Medical Needs.**

It is "beyond debate" that convicted prisoners and pretrial detainees have a

constitutional right to medical care. *Gordon*, 937 F.3d at 356. This constitutional

right protects against both current harm and the risk of future harm, even when the

harm might not occur immediately. *See Helling v. McKinney*, 509 U.S. 25, 33

(1993).

For convicted prisoners, an official's deliberate indifference to a serious

medical need constitutes cruel and unusual punishment under the Eighth

Amendment. *Estelle*, 429 U.S. at 104. Pretrial detainees, like Mr. Barfield, have

not been convicted of any crime and "may not be subjected to punishment of any description." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). A pretrial detainee's right to medical care is therefore governed by the Due Process Clause of the Fourteenth Amendment. *Id.* at 990.

The court below acknowledged that the "due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to the convicted prisoner." JA 527–28 (quoting *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)). Nevertheless, it applied the same two-pronged inquiry that governs Eighth Amendment claims.[2]

The Eighth Amendment analysis includes an objective component and a subjective component. *Gordon*, 937 F.3d at 356. The objective component is satisfied by a serious medical need. *See Scinto*, 841 F.3d at 225. A medical condition is serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

---

[2] As discussed below in the Section III, the lower court's application of the Eighth Amendment subjective deliberate indifference test was legal error because the standards under the Eighth and Fourteenth Amendments differ. However, here, Mr. Barfield follows the district court's reasoning that the Eighth Amendment standard applies to pretrial detainees as well. Mr. Barfield succeeds under either standard.

In a medical care case, the subjective component of an Eighth Amendment claim is met where a defendant "had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). A defendant's knowledge can be demonstrated though "direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence 'that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Scinto*, 841 F.3d at 226. Indeed, "[d]irect evidence of actual knowledge is not required." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). Further, the failure to respond to a prisoner's known medical needs "raises an inference of deliberate indifference to those needs." *Scinto*, 841 F.3d at 226 (brackets and citation omitted).

Applying this framework to the facts in the record, a reasonable jury could conclude that Defendants were deliberately indifferent to Mr. Barfield's serious medical needs when they denied him HCV treatment based on a blanket policy. The lower court's erroneous decision to the contrary requires reversal.

## A.     HCV Is A Serious Medical Need.

Mr. Barfield has a serious medical need as a result of his HCV diagnosis. This should not be a point in controversy. This Court has recognized the serious nature of HCV, finding that patients with the disease may experience liver damage,

called fibrosis, as well as cirrhosis, liver failure, and a significant risk of developing liver cancer. *Gordon*, 937 F.3d at 351.

Indeed, it is beyond dispute that HCV satisfies the objective prong of a deliberate indifference claim. *E.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (concluding that prisoner sufficiently pleaded deliberate indifference to his serious medical needs based on denial of HCV treatment); *Gordon*, 937 F.3d at 356–57 (finding it is undisputed that plaintiff's HCV qualified as a serious medical condition); *Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011) ("HCV infection is a serious medical condition that can lead to irreversible physical damage and even life-threatening situations.").[3] The seriousness of HCV is so well settled that defendants regularly concede this element. *See*, *e.g.*, *Gordon*, 947 F.3d at 356 ("The defendants do not dispute that Gordon's HCV qualifies as a serious medical condition[.]"); *Atkins*, 972 F.3d at 739 ("Here, everyone agrees that hepatitis C is an objectively serious medical condition."); *Pabon v. Wright*, 459 F.3d 241, 247

---

[3] *Also see, e.g., Stafford v. Carter*, No. 1:17-cv-00289-JMS-MJD, 2018 WL 4361639, at *12 (S.D. Ind. Sept. 13, 2018) (finding chronic HCV to be a serious medical need); *Pevia v. Wexford Health Source, Inc.*, No. CV ELH-16-1950, 2018 WL 999964, at *16 (D. Md. Feb. 20, 2018) (same); *Hoffer v. Jones*, 290 F. Supp. 3d 1292, 1299 (N.D. Fla. 2017) (same); *Parks v. Blanchette*, 144 F. Supp. 3d 282, 314 (D. Conn. 2015) (same); *Hilton v. Wright*, 928 F. Supp. 2d 530, 547-48 (N.D.N.Y. 2013) (same); *Coleman-Bey v. United States*, 512 F. Supp. 2d 44, 47 (D.D.C. 2007) (same).

(2d Cir. 2006) ("Defendants do not dispute that Hepatitis C qualifies as a serious medical condition[.]").

Further, courts across the country have recognized that the standard of care, as set forth in the AASLD Guidelines, provides that all patients diagnosed with chronic HCV should be treated without delay. *See, e.g.*, *Hoffer*, 290 F. Supp. 3d at 1296 ("[T]he present-day standard of care is to treat chronic-HCV patients with DAAs as long as there are no contraindications or exceptional circumstances."); *Stafford*, 2018 WL 4361639, at *13 ("It is undisputed that treatment with DAA medication represents the medical standard of care for treatment of chronic HCV[.]"). Indeed, courts have held, as a matter of law, that the standard of care for HCV is the administration of DAA medications and a departure from that standard constitutes deliberate indifference. *See, e.g.*, *Abu-Jamal v. Wetzel*, No. 3:16-CV-2000, 2017 WL 34700, at *10 (M.D. Pa. Jan. 3, 2017) (granting preliminary injunction requiring defendants to provide plaintiff with HCV treatment).

This law surrounding HCV treatment is well-settled and demonstrates that Mr. Barfield meets the objective prong of the deliberate indifference analysis. Notably, the magistrate judge did not make an explicit finding on the objective prong of Mr. Barfield's deliberate indifference claim. Yet the court appears to have concluded that Mr. Barfield's HCV was not sufficiently serious to warrant judicial

scrutiny. JA 530–31. To the degree that such a conclusion was reached, it was error.

"When ruling on a summary judgment motion, a court is obligated to search the record and independently determine whether or not a genuine issue of fact exists." *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (internal quotation marks omitted). The district court is also obligated to fully examine "the movant's own papers in support of its summary judgment motion because they may demonstrate that a genuine issue exists as to a material fact." *Id.* The lower court failed to meet these dual obligations here. Instead, it relied solely on Defendant Wilson's conclusory, self-serving affidavit and overlooked genuine disputes of material fact found in Defendants' own submissions.

Records submitted by Defendants in support of their motion for summary judgment confirm Mr. Barfield's HCV diagnosis. *See* JA 298. But in her affidavit Defendant Wilson opined that Mr. Barfield's HCV is "not an objectively serious medical condition." JA 52. Ms. Wilson did not describe how she assessed the seriousness of Mr. Barfield's condition or the progression of the disease. She cited to no test results, data, or other information in support of her opinion. And she failed to discuss the extent of liver damage the disease has already inflicted on Mr.

Barfield, or the inevitable likelihood of further liver deterioration. The magistrate judge nevertheless accepted this conclusory opinion.

Further, the lower court overstated the case presented by Ms. Wilson. The court asserted that Ms. Wilson had "reviewed Plaintiff's medical records, including those relating to his Hepatitis C." JA 530. This suggests the court believed there were records on which Ms. Wilson could have based her conclusory opinions. But the court may not simply take Defendants at their word. The court is obligated to "search the record" including all of Defendants' "own papers" to determine if there are genuine disputes of material fact. *See Campbell*, 21 F.3d at 55. Had the lower court done so, it would have found that there are *no records* "relating to his Hepatitis C" on which Ms. Wilson could have based her opinion. Of the more than 400 pages of medical records submitted by Defendants, only a single page is relevant to Mr. Barfield's HCV. That page contains only Mr. Barfield's initial diagnosis. *See* JA 298. Indeed, a thorough examination of the record reveals that Ms. Wilson's opinion is nothing but conclusory speculation.

As such, Defendants own documents create a genuine dispute of material fact, which was overlooked by the court below. *See Campbell*, 21 F.3d at 55. A reasonable jury, viewing the evidence in the light most favorable to Mr. Barfield, could conclude that Ms. Wilson had no basis for her opinion and that Mr. Barfield's HCV constitutes a serious medical need.

**B.     A Reasonable Jury Could Find That Defendants Were Deliberately Indifferent To Mr. Barfield's Serious Medical Needs.**

Defendants denied Mr. Barfield any HCV treatment. They based that denial on a blanket policy rather than an individualized medical determination. A reasonable jury could therefore find that Defendants were deliberately indifferent to Mr. Barfield's serious medical needs. The lower court's ruling to the contrary is contained in a single sentence: "Given Wilson's declaration and Plaintiff's failure to forecast any evidence to rebut it, there is no basis for any reasonable inference that Defendants were deliberately indifferent to any medical need of Plaintiff's." JA 531. But the district court erred once again. It misapplied the law. And the court overlooked genuine disputes of material fact when it continued to rely solely on the conclusory affidavit of a single Defendant instead of considering all of record evidence and viewing the facts in the light most favorable to Mr. Barfield.

It is undisputed that Mr. Barfield was diagnosed with HCV. Mr. Barfield repeatedly brought his condition to the attention of Defendants and requested treatment. JA 56, 57, 58, 61, 62. It is also undisputed that Defendants have not provided any medical treatment for Mr. Barfield's HCV. And viewing the facts in the light most favorable to Mr. Barfield, as the Court must at this stage, a reasonable jury could find that Defendants were aware of the substantial risk of harm posed by a failure to treat HCV, yet refused to provide treatment anyway. Defendant Wilson is a registered nurse at the FCDC, JA 52, responsible for the

health and well-being of all pretrial detainees under her care. The record demonstrates that she was routinely involved in Mr. Barfield's medical care. *See, e.g.*, JA 136–37. *See also supra* page 6–7. And, "by virtue of [her] role" in the jail medical department, it is "entirely reasonable to presume that [she] is familiar with the risks presented by untreated HCV." *Gordon*, 937 F.3d at 360. A reasonable jury could therefore determine that Defendants were deliberately indifferent to Mr. Barfield's serious medical needs. *See id.* at 362 (reversing summary judgment for defendants where plaintiff brought his HCV diagnosis to Defendants' attention, Defendants were presumably aware of the risks of untreated HCV, but Defendants nevertheless refused to provide treatment).

Further, the record demonstrates that Defendants denied Mr. Barfield HCV treatment based on a blanket policy rather than on an individualized medical judgment. In response to Mr. Barfield's requests for treatment, he was told, "Hope Health does not treat for HepC [sic] while incarcerated[.]" JA 56. When Mr. Barfield followed up, he was told that his request was denied based on a "rule" and later that "Hope Health do not treat inmates for Hep C unless they have initiated treated prior to incarceration [sic]." JA 57, 63.

Reliance on blanket policies, like the one at issue here, in the absence of individual medical determinations, constitutes deliberate indifference. Indeed, this Court has held that a plaintiff states an Eighth Amendment claim where, as here,

medical treatment is denied "based solely on the Policy rather than on a medical judgment concerning [the plaintiff's] specific circumstances." *De'Lonta*, 330 F.3d at 63. *See also Colwell v. Bannister*, 763 F.3d 1060, 1063 (9th Cir. 2014) (holding that the "blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy . . . is the paradigm of deliberate indifference").

In addition, a reasonable jury could find that the blanket policy applied here is based solely on pretrial detainees' presumed length of incarceration. In her affidavit, Ms. Wilson asserted that Mr. Barfield was denied treatment because "pretrial detainees can be transferred or released at any time from the FCDC[.]" JA 52–53.

But this Court has held that refusal to treat HCV based solely on length of incarceration constitutes deliberate indifference. *See Gordon*, 937 F.3d at 360 (holding that a reasonable jury could find defendant who denied HCV treatment based on sentence length deliberately indifferent).

*Gordon v. Schilling* is instructive. There, like here, defendants refused to provide the plaintiff with HCV treatment based on a blanket policy. *Gordon*, 937 F.3d at 352. There, like here, the policy at issue categorically denied prisoners HCV treatment based on presumed length of incarceration. *Id*. There, like here, "no assessment" was conducted to determine the plaintiff's "actual chance[]" of being transferred or released. And there, like here, the medical justification for the

23

policy was "questionable." *Id.* In fact, here, Defendants submitted no evidence regarding any medical justification for their policy. Defendant Wilson asserted that due to the possibility of release or transfer, the "continuous and complete courses of treatment for Hepatitis C cannot be guaranteed." JA 53. But she provided no support for that conclusory assertion. And DAA treatment can be completed in just eight to 12 weeks. CDC, HCV Questions and Answers. *See also* JA 482. A reasonable fact-finder could therefore infer that the rationale for this policy is, at a minimum, "questionable." And, as in *Gordon*, a reasonable jury could find that the Defendants were deliberately indifferent to Mr. Barfield's serious medical needs. *See Gordon*, 937 F.3d at 360. *See also Roe*, 631 F.3d at 850, 861-63 (upholding verdict for plaintiff finding that doctor who denied HCV treatment based on "blanket sentence-based policy" rather than a patient's individual medical condition was deliberately indifferent).

The lower court erred when it failed to apply this binding precedent. And the cases on which the lower court relied do little to bolster its erroneous decision. In *Crigger v. Wright*, the treatment at issue was the outdated, lengthy, and ineffective treatment regimen used prior to DAAs. *See* No. 1:15CV713 (LMB/IDD), 2016 WL 1626580, at *2 (E.D. Va. Apr. 20, 2016) (explaining that the jail provided only treatment that involved "the administration of a combination of multiple medications over a period of 48 weeks" rather than Harvoni, a DAA medication).

The *Crigger* court accepted the defendants' representations that treatment was inappropriate because the jail could not guarantee the full 48-week course of treatment to a pretrial detainee. *See id*. at 4. But here, the treatment requested by Mr. Barfield, and the current standard of care, involves a simple pill regimen that can be completed in eight to 12 weeks. And since *Crigger* was decided, this Court held that refusal to treat HCV based on length of incarceration constitutes deliberate indifference. *See Gordon*, 937 F.3d at 360.

*Davenport v. Perry* similarly provides no support for the district court's determination. *Davenport* relies largely on *Crigger*, which as just noted, turned on out-of-date facts and may no longer be good law following this Court's decision in *Gordon*. *See Davenport v. Perry*, No. 6:19-CV-02875-TLW, 2020 WL 3620023, at *2 (D.S.C. July 1, 2020). In addition, the decision not to treat the plaintiff in *Davenport* appears to have been based on an individualized medical determination, rather than a blanket policy, unlike the case here. *See id.*, 2020 WL 3620023, at *1 (finding plaintiff's "liver was functioning within a normal range").

The lower court also erred when it again overlooked genuine disputes of material fact. As discussed, the record demonstrates that Defendants denied Mr. Barfield HCV treatment based on a blanket policy. JA 56, 57, 63. During the course of litigation, however, Defendant Wilson submitted an affidavit asserting a different, post-hoc rationale for the denial of treatment. She opined that "Plaintiff's

Hepatitis C is non-emergent and additional medical care is/was not necessary." JA 52. But as discussed previously, Ms. Wilson's opinions in this regard are no more than conclusory speculation. Mr. Barfield's medical records demonstrate that Ms. Wilson never conducted or had access to any follow-up testing that would reveal the level of liver deterioration that has already occurred or inform her conclusion about treatment. And there is nothing in the record indicating that Ms. Wilson ever considered *any* HCV treatment for Mr. Barfield based on his individual medical needs, let alone any "additional" care.

Ms. Wilson also asserted additional, generic reasons for denying Mr. Barfield HCV treatment. She asserted that treating Mr. Barfield "is/was not medically advisable, since pretrial detainees can be transferred or released at any time from the FCDC" and that the "continuous and complete courses of treatment for Hepatitis C cannot be guaranteed." JA 52–53. But Ms. Wilson included no information about Mr. Barfield specifically or about his particular length of stay at the facility. She included no information about the length of a course of treatment. She did not explain why an eight- to 12-week course of treatment could not be completed during the year or more than Mr. Barfield would be at FCDC. And she did not explain why, should Mr. Barfield be transferred or released, his care could not be transitioned to an outside provider, just as a patient receiving treatment for any other chronic condition would.

By contrast, documents submitted by both parties demonstrate that Mr. Barfield informed Defendants that he would be incarcerated for at least another year or more when he requested treatment. *See* JA 56. That extended length of incarceration would obviate any concerns about completing an eight- to 12-week course of treatment.

In light of this conflicting information and Defendants' shifting and unsubstantiated explanations, a reasonable jury could infer that Defendants' initial explanation included in the grievance responses—that, by policy, detainees are not provided with HCV treatment—is the true rationale for denying Mr. Barfield care. This policy-based denial of care, in lieu of any individualized medical determination, constitutes deliberate indifference as a matter of law. *See De'Lonta*, 330 F.3d at 63. At a minimum, Defendants' contradictory and unsupported evidence is sufficient to establish a genuine issue of material fact. *See Campbell*, 21 F.3d at 55 ("[T]he court should look to the movant's own papers in support of its summary judgment motion because they may demonstrate that a genuine issue exists as to a material fact."). For these reasons, the district court erred by granting summary judgment in Defendants' favor.

## II. The Lower Court's Additional Bases For Summary Judgment Are Without Merit.

In a footnote, the lower court concluded that all Defendants were also entitled to summary judgment based on Eleventh Amendment immunity, and that

Defendants Cunningham and Nunn were additionally entitled to summary judgment because they had no personal involvement in Mr. Barfield's care. Both determinations contain errors.

First, Mr. Barfield sued all three defendants in their individual and official capacities, seeking both injunctive relief and damages. JA 7–8. Only Mr. Barfield's damages claims against Defendants in their official capacities are barred by the Eleventh Amendment. *See Cromer*, 88 F.3d at 1332 (holding South Carolina sheriff, in his official capacity, is immune from suit for money damages but not immune from claims for injunctive relief). The Eleventh Amendment has no bearing on the remaining claims. *See id.* ("Eleventh Amendment immunity does not protect state officials in their official capacities from § 1983 claims for injunctive relief."); *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983."). Mr. Barfield's claim for injunctive relief, and his damages claims against the Defendants in their individual capacities, therefore remain live.

Second, there remain genuine disputes of material fact as to the role Defendants Nunn and Cunningham played in the denial of care for Mr. Barfield. Mr. Barfield alleged in his Complaint that Defendants Nunn and Cunningham

"have the power to help me seeing as everything is run by them but have ignored me." JA 9.

Based on this information, and drawing all inferences in Mr. Barfield's favor, a reasonable jury could find that Defendants Nunn and Cunningham have policymaking and/or supervisory roles in which they knowingly implemented an unconstitutional policy and acquiesced in the denial of care to Mr. Barfield. *See, e.g.*, *Gordon*, 937 F.3d at 362 (holding prison officials may not "turn a blind eye to the real-world consequences of their policymaking and . . . escape liability for constitutional harms caused by their decisions.") (internal citation omitted); *Roe*, 631 F.3d at 861–67 (affirming jury verdict against medical director for his role in policy that categorically denied HCV treatment based on length of incarceration). Further, evidence in the record demonstrates that Defendant Cunningham was aware of Mr. Barfield's HCV diagnosis, of his requests for treatment, and of the fact that treatment was not provided. Indeed, she personally responded to one of Mr. Barfield's grievances on the matter in which he provided that information. JA 61. And Defendant Nunn "may not escape liability by claiming that he did not know the identities of the inmates who would suffer under his policies." *Gordon*, 937 F.3d at 362 (finding policymaker subject to both official and personal capacity claims).

The relevant information about Defendants Cunningham and Nunn is found in Mr. Barfield's complaint, submitted on the district court's standard pro se form, rather than in a declaration. However, pursuant to the liberal treatment afforded pro se filings and the dictates of Fed. R. Civ. P. 56(e), the district court, at a minimum, should have afforded Mr. Barfield the opportunity to present additional information regarding the roles of Defendants Cunningham and Nunn in the form of an affidavit. *See Veeder v. Tri-Cap*, No. 17-CV-11690, 2018 WL 7254610, at *8–9 (E.D. Mich. Dec. 13, 2018) (noting under Rule 56(e), plaintiff's factual assertions in his brief could be declared under penalty of perjury and recommending denial of summary judgment).

When considering summary judgment against a pro se plaintiff, courts must read the pleadings "liberally" and "interpret them to raise the strongest arguments they suggest." *Martin v. Duffy*, 977 F.3d at 298 (internal quotation marks and citation omitted). Further, Rule 56(e) provides courts with options when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact[.]" Fed. R. Civ. P. 56(e). These options include: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if undisputed evidence shows that the movant is entitled to it; or (4) issue any other appropriate order. *Id.* The "court's preferred first step" under Fed. R. Civ. P. 56(e)(1) is to

"afford an opportunity to properly support or address the fact." Fed. R. Civ. P. 56(e) advisory committee's notes to 2010 amendment. As such, at a minimum, the district court should have provided Mr. Barfield with the opportunity to supplement the evidentiary record.

### III. The Lower Court Erred When It Applied The Eighth Amendment's Subjective Standard To Mr. Barfield's Fourteenth Amendment Claims.

As a pretrial detainee, Mr. Barfield's constitutional rights are protected by the Fourteenth Amendment, rather than the Eighth Amendment. The district court acknowledged that those protections are "at least as great as the [E]ighth [A]mendment protections available to the convicted prisoners." JA 527–28 (quoting *Martin v. Gentile*, 849 F.2d at 870). It then applied the requirements of the Eighth Amendment, including the subjective deliberate indifference test, without further consideration of the distinction between the two standards. *See* JA 529. This was error.

A different standard applies to Mr. Barfield's claims as a pretrial detainee, as the Supreme Court clarified in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). In *Kingsley*, the Supreme Court confirmed that under the Due Process Clause the appropriate standard for a pretrial detainee's claim is "solely an objective one." *Id.* at 397.

To meet the objective standard, pretrial detainees must demonstrate that the defendant intentionally or recklessly failed to act to mitigate a risk of serious harm

even though a reasonable official would have known of the risk, or the risk was obvious. *See Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017); *Brawner v. Scott Cty., Tennessee*, 14 F.4th 585, 597 (6th Cir. 2021); *Miranda v. Cty. of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018); *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018). This standard requires "more than negligence but less than subjective intent—something akin to reckless disregard." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016).

This question of law is relevant here even though Mr. Barfield succeeds under either standard. Resolving the issue now will clarify the appropriate standard to be applied, should this Court remand Mr. Barfield's claims for further proceedings. *See Brawner*, 14 F.4th at 592 (explaining that "we must address the issue because the standard will be relevant on remand.").

### A. The Supreme Court Has Long Distinguished Between Eighth And Fourteenth Amendment Protections.

Claims brought by convicted prisoners arise under the Eighth Amendment's Cruel and Unusual Punishments Clause whereas claims brought by pretrial detainees arise under the Fourteenth Amendment's Due Process Clause. *Kingsley*, 576 U.S. at 400. The lower court's decision to treat this as a distinction without a difference was error. The "language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all[.]" *Id.*

The Eighth Amendment protects prisoners from "cruel and unusual punishments." U.S. CONST. amend. VIII. Only the "unnecessary *and wanton* infliction of pain implicates the Eighth Amendment," and therefore to violate the Eighth Amendment, a prison official must have a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis in original) (internal quotation marks omitted). Accordingly, to demonstrate an Eighth Amendment violation, convicted prisoners must establish that officials acted with "deliberate indifference," a subjective standard. *See Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994)*. See also id*. at 834 (explaining that the deliberate indifference standard "follows from the principle" that only the wanton infliction of pain violates the Eighth Amendment). The Supreme Court determined a subjective standard is appropriate under the Eighth Amendment because that amendment "does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id.* at 837.

But "the State does not acquire the power to punish" under the Eighth Amendment "until after it has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). "Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." *Id.*

When evaluating constitutional protections for pretrial detainees, therefore, "the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). *See also Martin v. Gentile*, 849 F.2d at 870 ("[W]hile the convicted prisoner is entitled to protection only against punishment that is 'cruel and unusual,' the pretrial detainee, who has yet to be adjudicated guilty of any crime, may not be subjected to any form of 'punishment.'") (citation omitted).

### B. *Kingsley* Clarified That An Objective Standard Must Be Applied To Fourteenth Amendment Claims, Like Mr. Barfield's Medical Care Claim.

The "'precise scope' of this Fourteenth Amendment right remains 'unclear'" in this Court. *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) (quoting *Martin v. Gentile*, 849 F.2d at 871). Without clarity on the scope of a pretrial detainee's Fourteenth Amendment right, the Court therefore has "traditionally looked to Eighth Amendment precedents in considering a Fourteenth Amendment claim of deliberate indifference to serious medical needs." 992 F.3d at 300.

The Supreme Court, however, has never applied the Eighth Amendment's subjective state-of-mind standard to Fourteenth Amendment claims brought by pretrial detainees. *Brawner*, 14 F.4th at 596. In *Bell v. Wolfish*, the Supreme Court considered a challenge to a wide range of prison conditions and determined that

pretrial detainees could prevail under the Fourteenth Amendment with purely objective evidence demonstrating that the conditions were not "rationally related to a legitimate nonpunitive governmental purpose" or "excessive in relation to that purpose." 441 U.S. at 561. And in *Kingsley*, the Supreme Court provided the clarity this Court seeks. The Supreme Court confirmed the distinction between the Eighth and Fourteenth Amendment standards and made clear that under the Fourteenth Amendment, "the defendant's state of mind is not a matter that a plaintiff is required to prove." 576 U.S. at 395. And as such, the Court clarified, "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* at 398. The appropriate standard for Mr. Barfield's claim as a pretrial detainee, therefore, "is solely an objective one." *Id.* at 397.

Like this Court, other Circuits previously had looked to Eighth Amendment standards when considering claims brought by pretrial detainees. But following *Kingsley*, the Second, Sixth, Seventh, and Ninth Circuits revisited those assumptions and clarified that *Kingsley*'s objective standard controls in claims under the Fourteenth Amendment, including medical care and failure-to-protect claims. *Darnell*, 849 F.3d at 34–35; *Brawner*, 14 F.4th at 596; *Miranda*, 900 F.3d at 352; *Gordon v. Cty. of Orange*, 888 F.3d at 1124–25.

The Second Circuit explained in *Darnell v. Pineiro* that "*Kingsley* altered the standard for deliberate indifference claims under the Due Process Clause" and overruled prior precedent that applied the same subjective deliberate indifference standard to both Eighth and Fourteenth Amendment claims. *Darnell*, 849 F.3d at 30, 35. That court subsequently applied the objective standard to medical care claims. *Bruno v. City of Schenectady*, 727 F. App'x 717, 720–21 (2d Cir. 2018).

Similarly, the Sixth Circuit ruled that, in light of *Kingsley*, applying the same analysis to Eighth and Fourteenth Amendment claims "is no longer tenable." *Brawner*, 14 F.4th at 596. The court went on to apply the objective *Kingsley* standard to a Fourteenth Amendment medical care claim. *Id.* at 597-98.

The Seventh and Ninth Circuits are in accord. In *Miranda v. County of Lake*, the Seventh Circuit held that "medical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley*." 900 F.3d at 352. And in *Gordon v. County of Orange*, the Ninth Circuit held that "logic dictates" applying the objective deliberate indifference standard to medical care claims. 888 F.3d at 1124.

By contrast only the Tenth Circuit has declined, in a reasoned opinion, to apply the objective standard outside of the excessive force context presented in

*Kingsley*.[4] *See Strain v. Regalado*, 977 F.3d 984, 991 (10th Cir. 2020). The Tenth

Circuit argued that *Kingsley* "turned on considerations unique to excessive force

claims" and "the nature of a deliberate indifference claim infers a subjective

component." *Id.*

But the Tenth Circuit's reasoning is faulty. The facts of *Kingsley* dealt with

excessive force, but its mandate extends to all claims brought by pretrial detainees.

*Kingsley* built on the Supreme Court's earlier decision in *Bell v. Wolfish*, which

"applied . . . [an] objective standard to evaluate a variety of prison conditions."

*Kingsley*, 576 U.S. at 398 (citing *Bell*, 441 U.S. at 541–43). And the Court did not

limit itself to excessive force scenarios when concluding that *Bell* and later

precedent affirmed that pretrial detainees need only provide objective evidence to

prevail on a claim alleging due process violations. *Id.* (concluding pretrial detainee

need only provide objective evidence regarding a "challenged governmental

action").

---

[4] The other three circuits to have considered the question—the Fifth, Eighth, and
Eleventh Circuits—cabined *Kingsley* to its facts. *Whitney v. City of St. Louis*, 887
F.3d 857, 860 n.4 (8th Cir. 2018); *Swain v. Junior*, 961 F.3d 1276, 1285 n.4 (11th
Cir. 2020); *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 419 n.4
(5th Cir. 2017). But they did so largely in footnotes and "with minimal analysis."
*Brawner*, 14 F.4th at 593. *See also Griffith v. Franklin Cty., Kentucky*, 975 F.3d
554, 589 n.1 (6th Cir. 2020) (Clay, J., concurring in part and dissenting in part)
(noting that the Fifth, Eighth, and Eleventh Circuits are "unpersuasive" on
*Kingsley* because they reached their conclusions "without analysis" or by
"mechanically appl[ying] a circuit rule").

Further, it is "clear" that the Supreme Court "adopted the subjective component of the test for deliberate indifference under the Eighth Amendment based on the language and purposes of that amendment, focusing particularly on 'punishments,' and not on any intrinsic meaning of the term." *Brawner*, 14 F.4th at 595 (rejecting the rationale of the Tenth Circuit).

This Court should therefore align itself with the Second, Sixth, Seventh, and Ninth Circuits and clarify that an objective standard applies to all claims brought by pretrial detainees, including medical care claims. Applied here, summary judgment remains inappropriate. As demonstrated above, a reasonable jury could find that the Defendants were deliberately indifferent to Mr. Barfield's serious medical needs under the more stringent subjective inquiry. Mr. Barfield therefore meets the objective test for the same reasons.

## CONCLUSION

For the foregoing reasons, this Court should reverse the lower court's award of summary judgment, hold that an objective standard applies to Mr. Barfield's Fourteenth Amendment claims, and remand for further proceedings.

## REQUEST FOR ORAL ARGUMENT

Mr. Barfield respectfully requests oral argument under Fourth Circuit Rule 34(a). This case presents a question of first impression in this Court: whether the objective standard from *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), applies to

medical care claims brought by pretrial detainees. In addition, this case raises

important questions about pretrial detainees' constitutional right to treatment for

Hepatitis C virus. Oral argument will materially advance this Court's resolution of

these issues of law and fact.


Dated: October 28, 2021    Respectfully submitted,

           */s/ Jennifer A. Wedekind*
           Jennifer A. Wedekind
           AMERICAN CIVIL LIBERTIES UNION
           915 15th Street NW
           Washington, DC 20005
           (202) 548-6610
           jwedekind@aclu.org

           Allen Chaney
           ACLU OF SOUTH CAROLINA
           P.O. Box 20998
           Charleston, SC 29413
           (843) 282-7953
           achaney@aclusc.org

           *Counsel for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 8,762 words.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface with 14-point Times New Roman font.

Dated: October 28, 2021        */s/ Jennifer A. Wedekind*
                                 Jennifer Wedekind

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2021, I electronically filed this brief with the Clerk of Court for the United States Court of Appeals for the Fourth Circuit, causing notice of such filing to be served upon all parties registered on the CM/ECF system.

*/s/ Jennifer Wedekind*
Jennifer Wedekind